**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| WILMAR OLEO NORTH AMERICA LLC<br><br>*Plaintiff,*<br><br>v.<br><br>EASTMAN CHEMICAL COMPANY<br><br>*Defendant.* | CASE NO. 4:24-cv-03171 |

**WILMAR OLEO NORTH AMERICA LLC'S RESPONSE TO EASTMAN'S
MOTION TO EXCLUDE THE TESTIMONY OF KARL L. KILLIAN**

Plaintiff Wilmar Oleo North America LLC ("Wilmar") files this Response to Eastman Chemical Company ("Eastman")'s Motion to Exclude Testimony of Karl L. Killian (Dkt. 53) and would respectfully show as follows:

## I.     INTRODUCTION

Eastman's motion to exclude is not a Daubert motion in any meaningful sense. It does not challenge Mr. Killian's qualifications, his data, or the reliability of his methodology. It does not contend that his analysis is speculative or unsupported. Instead, Eastman advances a single argument: that Mr. Killian should have framed his damages calculation differently under Texas Business and Commerce Code § 2.708. That is not a basis for exclusion. It is a merits argument dressed up as a Rule 702 challenge (and it is wrong). Courts do not exclude otherwise reliable expert testimony simply because one party prefers a different legal framing of the case. If they did, Daubert would become a vehicle for resolving damages disputes before trial.

The premise of Eastman's motion is flawed in any event. Mr. Killian did not ignore market price evidence. He relied on the most probative evidence of market price available: actual, arm's-length sales transactions for the same product, during the same time period. Eastman's suggestion that those real-world transactions must be disregarded in favor of a more abstract formulation is not grounded in law, economics, or common sense. In the end, Eastman's motion asks the Court to choose between competing damages theories and exclude one of them outright. That is not the Court's role at the admissibility stage. It is the jury's role at trial. The motion should be denied.

## II.    LEGAL STANDARD

Rule 702 permits expert testimony where it is based on sufficient facts, reliable methods, and will assist the trier of fact. FED. R. EVID. 702; *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002). The Court's role is not to determine whether the expert's conclusions are correct, but whether the methodology is reliable and relevant. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993). Disputes over assumptions, inputs, or competing interpretations of law and fact go to weight, not admissibility. *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).

## III.    ARGUMENT

### A. Eastman Identifies No Methodological Defect

Eastman's argument is straightforward: because Mr. Killian did not use the term "market price" in his report, his damages calculation is improper under § 2.708 of the UCC.  Eastman's motion therefore attempts to recast a disagreement over the proper measure of damages as a Rule 702 issue. But that is not a basis for exclusion. That is a merits dispute for trial—not a defect in methodology.

The Fifth Circuit has made clear that "[q]uestions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility." *Primrose*, 382 F.3d at 562. Likewise, the Court's gatekeeping role "is not intended to serve as a replacement for the adversary system," where "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" remain the appropriate means of testing competing expert opinions. *Pipitone*, 288 F.3d at 250 (quoting *Daubert*, 509 U.S. at 596).

Eastman's motion fits squarely within that principle. Eastman does not contend that Mr. Killian's calculations are arithmetically incorrect, that his data is unreliable, or that his methodology is unsound. It argues only that he should have labeled or structured his analysis differently for purposes of § 2.708. But "[q]uestions relating to the bases and sources of an expert's opinion"—including how the expert frames or characterizes his analysis—"affect the weight to be assigned that opinion rather than its admissibility." *Primrose*, 382 F.3d at 562. Eastman's criticism therefore goes to the weight of Mr. Killian's testimony, not whether the jury may hear it.[1]

## B. Mr. Killian's Methodology Is Standard and Reliable

Mr. Killian's analysis follows a straightforward and accepted damages framework. He calculated the difference between (1) the price Eastman promised to pay (but did not) and (2) the proceeds Wilmar actually obtained by reselling comparable volumes of glycerin to third-party customers after Eastman declined to purchase them. That approach reflects a basic economic

---

[1] Eastman's reliance on *Tran v. Computer Technology Solutions LP*, 2010 WL 11646559, at *3 (S.D. Tex. Oct. 29, 2010) underscores the flaw in its argument. There, the expert ignored the governing legal standard by disregarding controlling regulations and offering a calculation that directly conflicted with them without explanation. Here, Mr. Killian applied a standard damages framework grounded in real-world transaction data. The two are not comparable.

principle: the difference between expected contract performance and the actual outcome after mitigation. It is grounded in objective, transaction-level data and is neither novel nor speculative.

Eastman's motion hinges on the assertion that Mr. Killian "says nothing about market price." Dkt. 53 at 1–2. That characterization elevates form over substance. Mr. Killian relied on actual, contemporaneous resale transactions—sales of glycerin to third parties during the same time period. These contemporaneous resale transactions reflect the prevailing price at which glycerin was actually sold in the market and therefore constitute competent evidence of market price for purposes of § 2.708. Nor does Eastman explain why those transactions would not reflect prevailing market conditions, and Eastman likewise did not test Mr. Killian's methodology through deposition. It does not contend that the resale transactions were not arm's-length, that they were commercially unreasonable, or that they deviated from prevailing market conditions. Nor does it offer any alternative market data or analysis. Instead, Eastman simply asserts that Mr. Killian should have used a different formulation.

Eastman's rigid view of "market price" is also inconsistent with the UCC. Eastman's argument assumes § 2.708(a) provides the exclusive measure of damages. The Fifth Circuit has not adopted that rigid approach. The Fifth Circuit has rejected mechanical applications of § 2.708 in favor of approaches that reflect the seller's actual economic position. *Nobs Chem., U.S.A., Inc. v. Koppers Co.*, 616 F.2d 212, 216–17 (5th Cir. 1980). Consistent with that principle, courts recognize that market value may be established through real-world, contemporaneous transactions involving the same goods. *See, e.g., Piney Woods Country Life Sch. v. Shell Oil Co.*, 726 F.2d 225, 238 (5th Cir. 1984) (noting the market value is "the price which a reasonable buyer would have paid"); *Exxon Corp. v. Middleton,* 613 S.W.2d 240, 246 (Tex. 1981) ("Market value may be calculated by using comparable sales.").

Mr. Killian's reliance on actual resale transactions reflects the economic reality of Wilmar's mitigation efforts and provides a reliable basis for measuring damages. Eastman's contrary position does not identify a methodological flaw; it simply advances a competing theory of damages for the jury to consider.

## C. The Unjust Enrichment Opinion Is Likewise Admissible

Eastman's challenge to Mr. Killian's unjust enrichment opinion fares no better. Mr. Killian evaluated the economic benefit Eastman received by purchasing glycerin at a price lower than previously negotiated levels. That analysis is grounded in standard economic principles for measuring benefit, using the difference between the price Eastman paid and the price it had previously agreed to pay for the same product in the same commercial relationship.[2] Eastman's argument—that the analysis should instead focus on "reasonable value" defined in a different way—again reflects a disagreement with the framing of the opinion, not its reliability. Eastman's disagreement is properly addressed through cross-examination, not exclusion.

## IV.   CONCLUSION

Because Mr. Killian's opinions are reliable, relevant, and grounded in record evidence, the motion should be denied.

---

[2]   Eastman's reliance on *Mettler-Toledo, Inc. v. Fairbanks Scales, Inc.*, 2008 WL 11348468 (E.D. Tex. Oct. 27, 2008), is likewise misplaced. There, the court excluded a damages opinion because it was based on an arbitrary, results-driven methodology with "no particular reason" for key assumptions and a "too great an analytical gap between the data and the opinion proffered." *Id*. at *1, 3. Critically, and unlike here, the expert had been deposed and had testified "that there was no particular reason" for certain choices in his methodology. *Id.* Here, by contrast, Mr. Killian's analysis is grounded in actual transaction data and a straightforward calculation of the difference between contract price and resale proceeds. There is no analytical gap, and no ipse dixit.

Dated: April 1, 2026

Respectfully Submitted,

JORDAN, LYNCH & CANCIENNE PLLC

By: */s/ Kevin Jordan*
    Kevin Jordan
    *Attorney-In-Charge*
    State Bar No. 11014800
    SDTX No. 10373
    Walter Lynch
    SDTX No. 965265
    State Bar No. 22046330
    Susan Thomas
    State Bar No. 17019450
    SDTX No. 10427
    Charlotte Nicholas
    State Bar No. 24127872
    SDTX No. 3700019
    1980 Post Oak Blvd., Suite 2300
    Houston, Texas 77056
    Telephone: 713.955.4022
    Facsimile: 713.955.9644
    kjordan@jlcfirm.com
    wlynch@jlcfirm.com
    sthomas@jlcfirm.com
    cnicholas@jlcfirm.com

ATTORNEYS FOR PLAINTIFF
WILMAR OLEO NORTH AMERICA, LLC

6